## MILES HILLS *v.* FREDERICK SHERWOOD AND GEO. WINTERBURN, EXECUTORS OF THE LAST WILL AND TESTAMENT OF JAMES STOKES, DECEASED.

FINALITY OF JUDGMENT.—The finality of a judgment, if considered with reference to the Court rendering it, dates from the rendition of judgment, by the particular Court, upon the merits; but if considered with reference to the subject matter of the judgment, it does not become final until a judgment upon the merits has been rendered by the Court of last resort, or, if no appeal be taken, then by a Court having original jurisdiction to render a judgment upon the merits, and the time for an appeal or review has elapsed, or the party against whom judgment was rendered has acquiesced in its finality or waived an appeal.

LIMITATION OF ACTION.—Where S. covenanted with H. that the original Mexican title to certain lands which S. conveyed to H. was valid, and in the event said title should not be confirmed by the Courts of the United States, before which it was then pending, upon the final adjudication of the same, that S. and his legal representatives should and would be liable to H. for the purchase price of said lands, with interest; and where the District Court of the United States for the Northern District of the State of California, on the 9th day of November, 1859, adjudged said title invalid, from which judgment no appeal was taken or waiver

made of the right thereto, or acquiescence in the finality of said judgment declared, within five years thereafter; *held*, that the right of action for a breach of said covenant only accrued after the lapse of five years from November 9th, 1859, during which time said judgment was subject to appeal, and, as regards its subject matter, was not a final adjudication.

APPEAL from the District Court, Third Judicial District, Monterey County.

The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*William Matthews*, for Appellant.

As to the rule of construction of contracts, see Broome's L. M. 482, side page; *Goodtitle* v. *Bailey*, 1 Cowp. 600; 16 Johns. 179.

Appellant claims that when Stokes covenanted that the original Mexican title to the land conveyed would be declared valid by the Courts of the United States, upon the *final adjudication* thereon, he intended by those words a judgment beyond dispute, contestation, or appeal—a judgment absolute and conclusive, and which in no event could be disturbed.

The judgment of the United States District Court, pronounced in November, 1859, although final in reference to the Court in which it was rendered, was not final in reference to the property involved until the claimant had waived on the record his right of appeal, which he did not do, or until the time within which an appeal might have been taken had expired; that is to say, until November, 1864. And if so, no breach of the covenant occurred until that date, and the statute was not until then set in motion.

A "final judgment" may be a judgment final in the Court which renders it; or it may be final as to the subject matter of the controversy. The latter is the broader definition, and includes the former. (*The United States* v. *The Schooner Peggy*, 1 Cranch, 103; 1 Con. 257; *Snell* v. *Bridgewater Cotton Gin Manufacturing Company*, 24 Pick. 296; 3

Bl. Com. 316; 32 Cal. 131; 1 Co. Litt. 168, Mr. Hargrave's note 2; *Davis* v. *Davis*, 26 Cal. 46; *Richardson* v. *Williamson*, 24 Cal. 290; 20 Cal. 225; 24 Cal. 114; 20 Howard, 263; 26 Cal. 457.)

*Thomas Bodley*, for Respondents.

The covenant of Stokes, properly construed, means simply that he guaranteed that the Government of the United States, by its Courts, would adjudge the title to the rancho good at the last appearance of the case before them.

He made no covenant to appeal the case to the Supreme Court of the United States. He did not covenant to take it beyond where it was then pending. He only said by his covenant: "I, being plaintiff in this suit, will warrant title so long as I choose to prosecute it." It will be observed that at the date of the covenant, the title to the rancho was pending in the District Court of the United States for the Northern District of California, and in no other; and that the language of the contract is: "by the Courts of the United States before which it was then pending upon the final adjudication of the same." We submit, then, that the broadest and most favorable construction of the contract for the appellant cannot carry the covenant into the Supreme Court.

The judgment of the District Court became final as to Stokes the moment the decision was rendered, subject only to his personal right to appeal, and if he preferred to pay the penalty of his broken covenant, rather than incur the trouble and expense of an appeal, he had a perfect right so to do, and the appellant only is at fault for not bringing his action before limitation became a bar.

But the question of when the breach took place is not left open for construction or argument; our statute has settled definitely what a final judgment is. Under the Law of Appeals, (Title IX, Sec. 336,) the distinction between *final judgments* and *other orders* is drawn with the greatest distinct-

ness and clearness, and we refer to that section with the confident opinion that it will be found to settle this case. We also refer to Chapter XI of same Title.

By the Court, SAWYER, J. :

The defendants are sued as executors of one James Stokes, to recover the purchase money paid for a tract of land conveyed by Stokes to plaintiff. The conveyance of Stokes as alleged in the complaint, and not denied in the answer, contained a covenant " that the original Mexican title of said land was valid, and in the event that the said original title to the said land should not be confirmed by the Courts of the United States, before which it was then pending, upon the final adjudication of the same, the said Stokes, his heirs, executors and administrators should and would be liable to the plaintiff for the sum named and mentioned in the said deed as the consideration thereof." It is averred in the complaint " that the said original Mexican title to the said land was thereafter—viz : on the 9th day of November, A. D. 1859, by the District Court of the United States for the Northern District of California, the Court having jurisdiction to hear and determine the same—declared and adjudged to be invalid, and that no appeal was taken from the said decision of the District Court of the United States, within the time required by law, and that the said decision thereafter—viz : on the 9th day of November, 1864—became final, and thereby the said covenant of the said Stokes became broken," etc.

The answer in express terms admits the making of the covenant as set forth ; that the title to the land was on or about the 9th day of November, 1859, as they are informed and believe, on the 12th of November, 1859, declared and adjudged by the said District Court to be invalid ; that no appeal was ever taken, and that thereby the said covenant of the said Stokes became broken. They then " deny that on the 9th of November, A. D. 1864, or at any other time in

the year 1864, the said decision of the District Court for the Northern District of California became final, or that any cause of action accrued to the plaintiff within the year 1864; but aver the fact to be, that said decision of said District Court became final and operative on the 12th day of November, 1859, and that a cause of action then accrued to plaintiff against said James Stokes."

The cause was submitted on the pleadings, and defendant had judgment.

The only averment of the complaint denied—that the judgment of the District Court became final on the 9th day of November, 1859—is the statement of a conclusion of law drawn from the facts averred in the complaint, and admitted in the answer. If the judgment was a "final adjudication" upon the title from the time it was rendered by the District Court, within the meaning of the covenant, then this action, which was not commenced till December 12th, 1865, was barred by the Statute of Limitations; upon that hypothesis the right of action accrued either November 9th or 12th, 1859, as admitted by the answer. But if the adjudication did not become final, within the meaning of the covenant, till the time for appeal expired, which was five years after the rendition of the judgment of the District Court rejecting the claim, (*United States* v. *Pacheco,* 20 How. 261,) the action was brought in time. A judgment may be a "final adjudication" in different senses. It may be final as to the Court which renders it, without being final as to the subject matter. "The last decree of an inferior Court is final in relation to the power of that Court, but not in relation to the property itself, unless it be acquiesced in." (*United States* v. *Schooner Peggy,* 1 Cranch, 103.) Although a judgment may be final with reference to the Court which pronounced it, and, as such, be the subject of an appeal, yet it is not necessarily final with reference to the property, or rights affected, so long as it is subject to appeal and liable to be reversed. The "final adjudication" intended by the parties to the covenant in question was, doubtless, an adjudication final as

to the land and the rights of the parties. Had an appeal been taken before this action was brought, unquestionably, the action could not have been maintained until after a final disposition of the appeal. (*United States* v. *Schooner Peggy*, 1 Cranch, 103; *Thornton* v. *Mahoney*, 24 Cal. 569.) The provisions of the sixth section of the Statute of Limitations except from the operation of the section lands claimed under grants from the Mexican Government, "if such action be commenced within five years from the time of the final confirmation of such title by the Government of the United States, or its legally constituted authorities." Under this provision and the Act of Congress of 1851 establishing the Board of Land Commissioners, etc., it has been held that the confirmation is not final, and the time does not begin to run till the patent issues; for, till then, the location is subject to be changed. (*Davis* v. *Davis*, 26 Cal. 46; *Johnson* v. *Van Dyke*, 20 Cal. 228.) In this case the judgment was subject to appeal, and to be reversed, at any time within the five years. The reasons for the rule adopted in the cases cited apply with equal force to this. Besides, had plaintiff commenced his action on the 13th of November, 1859, or at any time within five years after the rendition of the judgment of the District Court, Stokes could immediately have taken his appeal, set up the facts in his answer, and defeated the action. There is nothing to show any waiver of an appeal upon the record—any acquiescence in the finality of the judgment upon the subject matter. No absolute right of action against Stokes had vested in the plaintiff till the time for appeal expired; for while it was in the power of Stokes, at his own option, by an appeal and further litigation in the higher Court to defeat any action that might be brought against him on the covenant by plaintiff, a cause of action could not be said to have accrued. We think there was not a final adjudication, within the meaning of the term as used in the covenant, till the time for appeal expired, and that the plaintiff was entitled to judgment on the case as presented by the pleadings.

Judgment reversed and the District Court directed to enter judgment in pursuance of the prayer of the complaint.