[S. F. No. 2789. In Bank.—August 5, 1902.]

In the Matter of the Estate of JOSEPH M. WOOD, Deceased. ABBIE ROSE WOOD, Appellant, v. MARTHA WOOD, Executrix, etc., et al., Respondents.

Divorce—Construction of Code—Limitation as to Remarriage.—A divorce is absolute under the laws of this state, and its effects are not suspended until a year has elapsed, under section 61 of the Civil Code, prohibiting a remarriage, except as between the parties, until its expiration. [Temple, J., Harrison, J., and Van Dyke, J., dissenting.]

Id.—Second Marriage in Another State.—A second marriage solemnized in another state of a person divorced under the laws of this state, before the expiration of the year provided for in section 61 of the Civil Code, which is valid by the laws of that state, is valid in this state. [Temple, J., Harrison, J., and Van Dyke, J., dissenting.]

CXXXVII. Cal.—9

APPEAL from an order of the Superior Court of the City and County of San Francisco denying an application for a family allowance. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Lloyd & Wood, and Timothy J. Lyons, for Appellant.

J. C. Bates, and Oliver P. Evans, for Martha Wood, Executrix, Respondent.

Evans & Meredith, for minor heirs and legatees, Respondents.

John H. Durst, for Joseph White, Respondent.

Mullany, Grant & Cushing, and C. S. Cushing, for Blake, Moffit & Towne, and Ruby A. Jewell, Respondents.

William P. Humphreys, for all unrepresented persons, Respondents.

GAROUTTE, J.—This appeal is prosecuted from an order denying appellant's application for a family allowance, she claiming to be the surviving widow of the deceased, Joseph M. Wood. It is taken on a judgment-roll without the evidence, and the denial of the family allowance was based solely upon the ground that appellant's marriage with the deceased was a nullity. The appellant, Abbie Rose Wood, and the deceased, Joseph M. Wood, were married at Reno, in the state of Nevada, on January 1, 1898. The marriage was by license, and solemnized in all respects according to the laws of that state. At the date of the marriage Joseph M. Wood was an unmarried man, and the appellant, Abbie, had been previously divorced. Her divorce took place in the courts of the state of California, August 19, 1897, and the deceased and appellant were residents of California. The divorce upon its face was absolute in form, and had not been appealed from at the time of the second marriage, a period of four and one-half months after the decree was rendered. Aside from the question involved as to the validity and effect of the aforesaid decree of divorce, the marriage in the state of Nevada was a valid, binding marriage.

These parties were entitled to enter into a contract of marriage in the state of Nevada, if appellant, upon January 1, 1898, had been previously divorced from her former husband by the decree rendered in the state of California. The question is then presented, Was she a single woman at the time she married Wood in the state of Nevada? For if she was a married woman in California at that time, she was also a married woman in Nevada, and therefore could not contract this second marriage. The answer to this question demands a construction of section 61 of the Civil Code; and other sections of the same code bearing upon the same subject-matter must be considered in passing upon this question of construction. Section 61 is as follows: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless: 1. The former marriage has been annulled or dissolved; provided, that in case it be dissolved, the decree of divorce must have been rendered and made at least one year prior to such subsequent marriage."

The court does not find it necessary to seek for the moving cause actuating the legislature in amending this section by the recent addition thereto of that provision containing the one-year clause. It is argued upon the part of respondent that it was enacted in line with a sound public policy, which should prohibit marriages of divorced persons within the period of time given by the statute for an appeal from divorce decrees. Yet it is evident that this was not the whole reason for the legislation, for the evil to be avoided would still remain until the appeal from the decree was finally affirmed or reversed,— a result which would not be determined within the one-year period. It also may be mentioned that the time to appeal from a divorce decree has been shortened recently to a period of six months, and yet the one-year clause found in this section has not been changed to accord therewith. But whatever may be the public policy which demanded the law, the construction of that law can be arrived at, regardless of that particular policy.

At the outset it may be said that the policy of the law of the civilized world is to sustain the validity of marriage contracts. In this case an opposite conclusion to that declared by

the majority of the court would nullify hundreds of marriages, place the stamp of illegitimacy upon scores of children, and change the source of title to great property interests. Unless the law points plainly to that end, such a conclusion should not ·be declared. And, as the court views the law, it is not plain to that end, but plain to the contrary.

It is the contention of respondent that by virtue of the provisions of this section of the code appellant was not absolutely divorced until one year after the decree of divorce was rendered. In other words, it is claimed that this section is to be construed as part of the decree by operation of law, and so reading the decree, it is not absolute and not effectual until one year after its rendition; and, therefore, it is contended that it was not absolute in this case when the marriage took place in Nevada, and consequently appellant was not then a single woman. That the legislature had power to provide for the rendition of a decree of divorce by a court which should not be absolute for the period of one year after its rendition we have no doubt; but that the legislature has failed to so provide by section 61, or even attempted so to do, we also have no doubt. The obvious meaning of the section is, that neither of the divorced parties shall marry within the period of one year after the decree of divorce is rendered. The statute is a prohibition pure and simple upon the marriage of either party for one year; and declares the penalty for a violation of this prohibitory provision  to be the nullity of the marriage. This is the obvious construction of the section, testing it by its face; and when it is tested in the light of other sections treating of the same general subject the soundness of this construction is made more certain.

Section 61 declares that the subsequent marriage is void from its inception, unless "the former marriage has been annulled or dissolved; provided, that in case it be dissolved, the decree of divorce must have been rendered and made at least one year prior to such subsequent marriage." Thus the year provision in direct words applies to marriages already dissolved; for it declares in substance that the marriage must have been *dissolved* at least one year, or the second marriage will be void. The section thus speaks for itself, and when the verb "dissolve" is used, as relating to the first marriage, it means, and can only mean, a dissolution of the marriage—a

divorce. Again, when a decree of divorce has been *"rendered
and made"* the marriage is dissolved, and the section, by the
use of those words, thus declares it must have been *dissolved*
one year before either party may marry again. The meaning
of the word "rendered" as applied to decrees and judgments
is well settled, and when a decree or judgment is rendered it
has full force and effect. Even the entry of it does not go
to its validity. It has full force and effect regardless of the
mere ministerial act of entering it upon the judgment-book.
Mr. Freeman in his work on Judgments declares (vol. 1, sec.
38): "Expressions occasionally find their way into reports
and text-books indicating that the entry is essential to the
existence and force of the judgment. These expressions have
escaped from their authors when writing of matters of evi-
dence, etc. . . . The rendition of a judgment is a judicial
act; its entry upon the record is merely ministerial. A judg-
ment is not what is entered, but what is ordered and
considered. The entry may express more or less than what
was ordered by the court, or it may be neglected altogether,
yet in neither of these cases is the judgment of the court any
less its judgment than though it were accurately entered. . . .
It is therefore not indispensable to the validity of an execution,
and a sale made thereunder, that a judgment should have been
actually entered before the writ issued." (See, also, *Estate
of Hughston,* 133 Cal. 321.) This principle of law applies
even with more force to decrees in probate and equity. And
this court has held more than once that when a decree of
divorce is *rendered* that decree is of full force and effect.
(*In re Newman,* 75 Cal. 221;[1] *In re Cook,* 77 Cal. 232;[2] *In re
Cook,* 83 Cal. 417.)

Section 61, subdivision 1, does not purport to operate upon
or affect a decree of divorce. It deals with divorced persons.
It affects them after the decree of divorce has been rendered.
It deals with them after they have become unmarried. The
article of the code under which this section is found deals
with the *validity* of marriages. Under the article dealing
with the *dissolution* of marriages we find section 91, which
declares: "The effect of a judgment decreeing a divorce is to
restore the parties to the state of unmarried persons." By
this section the effect of a judgment decreeing a divorce is

[1] 7 Am. St. Rep. 146.          [2] 11 Am. St. Rep. 267.

laid down; and sections 90 and 91 substantially declare that when a marriage is *dissolved*, the parties are restored to the state of unmarried persons. The word "dissolved" is used in the same sense in sections 61 and 90, and thus it is made plain that the proviso found in subdivision 1 of section 61 contains legislation affecting unmarried persons alone.

Again, section 194 of the Civil Code provides: "All children of a woman who has been married, born within ten months after the dissolution of the marriage, are presumed to be legitimate children of that marriage." The words "dissolution of the marriage," as bearing upon a dissolution of marriage by divorce, can only refer to the time when the decree of divorce is rendered, and the ten months' period mentioned in the section begins to run from that time. And it would be a contradiction of terms to say that the decree of divorce does not take effect until one year after its rendition, and at the same time say that the dissolution of the marriage takes place when the decree is rendered. If the decree does not take effect until one year after its rendition, then the dissolution of the marriage does not take place until that time. And it would follow that this ten months' period of time referred to in the statute would not begin to run until one year after the decree of divorce was rendered. It is quite apparent that the statute should not be so construed.

Let us make a closer examination of this section. It says in substance that after the marriage is *dissolved*, the former husband and wife may contract a subsequent marriage with *each other* immediately. Thus the section itself recognizes that the first marriage is dissolved by the decree. For, if not dissolved by the decree when rendered, how could these two people intermarry again? If the decree when rendered is but an interlocutory or *nisi* decree,—that is, a decree which does not take effect until one year after its rendition,—then the former husband and wife could not intermarry within that period. In answer to this legal dilemma, it is said in substance that the decree dissolving the marriage is complete as to the husband and wife, but not full and complete as to any other person. This presents another dilemma; for it would be inconsistent to hold that these two people were entirely and completely divorced as to each other, but not divorced to the extent that either could marry a third person. Surely if they

are completely divorced as to each other by the decree, then by all law they are completely divorced as to the whole world. This must be so, for the decree is *inter partes,* and, as far as its binding effect is concerned, the world at large has nothing to do with it.

Section 61, being general legislation prohibiting marriages between certain persons, has no extraterritorial operation. An exhaustive review of this question is found in *State v. Shattuck,* 69 Vt. 403.[1]  It is there said: "The language of our statute is general, and it is a fundamental rule that no statute, whether relating to marriage or otherwise, if in the ordinary general form of words, will be given effect outside of the state or country enacting it. . . . Hence, if a statute, silent as to marriages abroad, as ours is, prohibits classes of persons from marrying generally, or from intermarrying, or declares void all marriages not celebrated according to pre-scribed forms, it has no effect upon marriages, even of domiciled inhabitants, entered into out of the state.  Those marriages are to be judged of by the courts of such state just as though the statute did not exist."  Bishop on Marriage and Divorce (sec. 867) declares the same rule.  Therefore, when section 61 uses the language, "a subsequent marriage contracted by any person," etc., it only refers to a subsequent marriage contracted in the state of California by any person; and the section should be read as though the words "in the state of California" followed the word "contracted."  It cannot be possible that the legislature by this section attempted to declare what particular marriages contracted in the state of Nevada, or any other place in the whole world, would be invalid and void.  Section 63 of the Civil Code, hereafter quoted, shows that the legislature never thought of such legis-lation.  By inserting the words *"in the state of California"* in the section,—words which it is perfectly apparent should be inserted by construction,—*then there is nothing left in this case for respondent.*  For the marriage here contracted, and which we have here under consideration, was not contracted in the state of California, but in the state of Nevada, and there-fore section 61 has no application to it whatsover.  Section 61 refers to marriages contracted in this state, exactly as does section 60, which declares: "All marriages of white persons

[1] 60 Am. St. Rep. 936.

with negroes or mulattoes are illegal and void." In the face
of that law, this court held that a marriage between a white
man and a negro woman, contracted in the territory of Utah,
being valid there, was a valid marriage in this state. (*Pear-
son* v. *Pearson*, 51 Cal. 120.) And this decision was based
upon the broad proposition of law found formulated in section
63 of the Civil Code, which declares: "All marriages con-
tracted without this state, which would be valid by the laws
of the country in which the same were contracted, are valid
in this state."

Much weight is attached by respondent to the case of *Brook*
v. *Brook*, 9 H. L. Cas. 193. As to the legal positions taken by
the various learned English judges in that case, Dr. Bishop,
in his work upon Marriage and Divorce (secs. 876-877 et seq.),
shows them to be fallacious. (See, also, *Commonwealth* v.
*Lane*, 113 Mass. 458.[1]) The statute of this state (section 63
of the Civil Code) and the case of *Pearson* v. *Pearson*, 51 Cal.
120, are also entirely opposed to *Brook* v. *Brook*.

There is no finding of fact in this record that these two
people, domiciled in the state of California, went to the state
of Nevada to contract a marriage there, in order to evade
the laws of the state of their domicile. Such conduct has
been held by courts of some jurisdictions to be a fraud upon
the law of their domicile, and therefore not to be countenanced.
Whether that be the law of this state, when considered in
view of the provisions of section 63 of the Civil Code, it is
not necessary for this court to consider upon the present state
of facts. (*Norman* v. *Thompson*, 121 Cal. 624.[2]) It follows,
from what has been said, that when the decree of divorce
was rendered, August 19, 1897, Abbie Rose Wood became an
unmarried person, and being an unmarried person, and other-
wise competent to marry outside of the state of California,
she could contract a valid marriage with J. M. Wood in the
state of Nevada under its laws. And the marriage being valid
in that state, it is valid in this state. (*Pearson* v. *Pearson*,
51 Cal. 120; Civ. Code, sec. 63.)

For the foregoing reasons the order is reversed.

McFarland, J., and Henshaw, J., concurred.

---

[1] 18 Am. St. Rep. 509.       [2] 66 Am. St. Rep. 74.

BEATTY, C. J., concurring.—I concur in the judgment of reversal. If the appellant is the widow of Joseph M. Wood, she is entitled to a family allowance. If the Reno marriage was lawful in Nevada, it is valid here (Civ. Code, sec. 63), and if at the date of the Reno marriage plaintiff was an unmarried person, the marriage was lawful in Nevada. Whether she was an unmarried person depends upon the proper construction of a few sections of our Civil Code.

A marriage is dissolved by death or by divorce. (Civ. Code, sec. 90.) ''The effect of a judgment decreeing a divorce is to restore the parties to the state of unmarried persons.'' (Sec. 91.)

This section should always have been read with the qualification that the decree must be final and irreversible; that is to say, the *status* of an unmarried person should never have been held to accrue until the time for appealing had elapsed, or, in case of an appeal taken, until an affirmance of the decree by the court of last resort. But it has been otherwise construed. This court has decided that a divorced person becomes an unmarried person immediately upon the rendition of the decree, and many marriages have been entered into, pending the right of appeal, under license of that construction. It is too late, therefore, for this court to adopt another.

The amendment of February 25, 1897, to section 61 of the Civil Code was probably intended by its author to remedy the anomalous condition of our marriage law resulting from the construction theretofore placed upon section 91 of the Civil Code, under which a husband or wife could be taken subject to the contingency of being displaced by the reversal of an appealable, and possibly erroneous, decree.

Unfortunately, however, the sections (90 and 91) that required amendment were overlooked, and an amendment ingrafted upon section 61, which cannot be held to affect a marriage celebrated in a foreign jurisdiction without running counter to the current of decision in the courts of the United States, and at least one decision of this court. (*Pearson* v. *Pearson,* 51 Cal. 120.)

If the object of the amendment was to postpone the change of *status* resulting from the divorce until, and to make it dependent upon, the finality of the decree, it was wholly inadequate to that purpose. It would not even have suspended

the effect of the decree during the time then allowed for taking an appeal from the judgment, for the year of suspension was to commence with the rendition of judgment, while the year limited for appealing only commenced to run from the entry of judgment,—acts often separated by considerable lapse of time. Much less would it have suspended the effect of the decree pending a decision of the appeal.

For these reasons I cannot regard the amendment of section 61 as having any effect upon the accepted construction of sections 90 and 91 of the Civil Code, and this conclusion is fortified by the consideration that an act involving consequences in their nature penal is to be strictly construed. That our marriage law requires amendment, and that the supposed intention of this amendment was a laudable one, I am fully persuaded, but that intention should be made manifest in the terms of the law, and not left to rest upon a doubtful construction. As the law stands, and as it has been construed, my conclusion is, that the appellant became an unmarried woman when the decree of divorce was rendered; that her marriage was valid in Nevada, though forbidden by our law; that it was consequently valid here (Civ. Code, sec. 63); that she is the widow of Joseph M. Wood, and entitled to a widow's allowance.

TEMPLE, J., dissenting.—I dissent. It may be conceded that the marriage was valid if plaintiff was, in the full sense of the term, an unmarried woman at the time. She was formerly the wife of Robert M. Smith, but obtained a decree of divorce against him on the nineteenth day of August, 1897. The decree was absolute in form. It is declared in section 91 of the Civil Code that such a decree restores the parties "to the state of unmarried persons." The decree has not been set aside or suspended, nor has any appeal been taken therefrom. It is contended, however, that this did not qualify her to marry again for one year after its rendition, unless she remarried her former husband.

This contention is based largely on section 61 of the Civil Code. That section, so far as material here, reads as follows: "A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and

void from the beginning, unless: 1. The former marriage has been annulled or dissolved; provided, that in case it be dissolved, the decree of divorce must have been rendered and made at least one year prior to such subsequent marriage."

In addition, section 63 of the Civil Code makes valid in this state any marriage contracted without the state which is valid where entered into. Section 90 declares that marriage is dissolved,—"1. By the death of one of the parties; 2. By a judgment of divorce."

Section 91 declares that the effect of a judgment decreeing a divorce is to restore the parties to the condition of unmarried persons.

The question here is whether the proviso in section 61 becomes in effect a part of every decree of divorce thereafter pronounced. That it must be so considered is, I think, quite obvious. Such is the natural effect of such a statute, and such are the decisions in all analogous cases. And it matters not how the statute is worded, provided it appears that it was intended that the decree of divorce should not at once restore the parties to the condition of unmarried persons. Nor is there any force in the suggestion that they are expressly authorized within the period to marry each other as implying that they had been divorced. The statute is a limitation upon the effect of the decree and recognizes the fact that for many purposes the parties are divorced when the judgment is rendered.

A judgment in a divorce proceeding is in some respects peculiar. For some purposes, it is very desirable that it should take effect at once. If there are children, their custody and care should be at once provided for. There are also special reasons why it should not take effect so that the parties can remarry, except with each other, so long as the judgment is subject to review and to be reversed. It would certainly be a scandalous condition of things if one could lawfully have two wives or two husbands. Many divorce judgments are procured upon substituted service of summons. In such case the court may, and upon a proper showing should, allow the defendant to answer to the merits within one year after the rendition of the decree. (Code Civ. Proc., sec. 473.) Such permission would vacate the decree, and the parties would surely not be unmarried persons.

And again, when this proviso was adopted a judgment was subject to appeal for one year. During all that time, and if an appeal were taken, until the appeal was determined, the case was pending and undetermined, except for certain limited purposes. If the parties are allowed to marry, except each other, within that time, the same scandalous conditions might occur which I have specified. It would transpire that the new spouse, in case of a marriage, would have been taken on condition. Any civilized people would desire to avoid such possibilities.

But it matters not what the intention of the legislature may have been, except as manifested in the text of the statute. It is admitted that the statute renders the parties incapable of marrying during the period within this state. If that be so, the provision has the precise effect in this state as though it were a valid clause in the decree. In other words, as to this state, it is to be deemed a part of every decree of divorce. There is no authority or precedent for a different construction as to the effect of the decree within and without the state. To so hold would work partial defeat of the legislative policy, which every one must admit is in the interests of good morals. If the remedy is not as complete as it might have been, that will not affect the execution of the law. That such was the legislative intent is obvious. Similar statutes have long existed in other states. (2 Nelson on Divorce and Separation, par. 582a.) Two classes of statutes upon this matter are discussed in the authorities: 1. Those which prohibit marriage within the limited period, but do not declare the second marriage void. It is held that such statutes are penal and have no extraterritorial effect. In such a case, therefore, a marriage in another state, which is lawful there, will be held to be valid in the state of the domicile and where the decree was obtained.

The other class of statutes are like ours in reference to this matter. They declare the subsequent marriage void from the beginning, unless the parties shall have been divorced for a specified period. In such cases a subsequent marriage within the period is held void, although entered into in another state. This is upon the ground that the parties are not unmarried persons, and therefore not capable of lawfully contracting marriage anywhere. Under such conditions it would follow

as a matter of course that the statutory provision is to be deemed as qualifying the effect of every decree of divorce thereafter rendered.

This question is so fully and so well considered in *McLennan* v. *McLennan,* 31 Or. 480,[1] that it is only necessary to refer to that case for a full statement of the argument. The statute of Oregon simply declared what I conceive to be the effect of several sections of our Civil Code, construed together, with the difference that the period during which the parties were declared incapable of marriage was for the time to take an appeal, and during an appeal pending, if one were taken. The parties married in the state of Washington during the period of the prohibition. It was held that the divorce was only partial, and would not be complete until the expiration of the limited period. The distinction between this class of cases and those cited by appellant is clearly stated. To the same effect are the cases of *Wilhite* v. *Wilhite,* 41 Kan. 159, and *Conn* v. *Conn,* 2 Kan. App. 419. (See, also, *Calloway* v. *Bryan,* 51 N. C. 570; *Cox* v. *Combs,* 8 B. Mon. 231.)

In Washington the statute directs the Court to order a complete divorce to both parties, and that "neither party shall be capable of contracting marriage with a third person until," etc., the period for an appeal shall have expired. This statute was construed in *In re Smith's Estate,* 4 Wash. 702, and that case is interesting in view of some arguments here, because it attempts to reconcile the limitation upon the effect of the decree with the other provision that the court shall grant a complete divorce. The divorce must be a full divorce and not a divorce *a mensa,* but the judgment will not have full effect until the expiration of the period prescribed. Before the codes partial divorces had been allowed in this state. This was changed by the codes, and hence the emphatic language as to the effect of the decree. When the decree takes complete effect it shall be a full divorce.

Many cases are cited by appellant which are supposed by appellant to hold a contrary doctrine. They are all, I think, cases construing a statute which merely prohibited the marriage, or which directly prescribed a penalty. It is universally held that such laws have no extraterritorial force. All admit that the state may declare certain marriages void as opposed

---

[1] 65 Am. St. Rep. 835.

to its policy or to good morals, and that such laws will be upheld and such marriages will be held void, wherever contracted. This is declared to be the rule in *Commonwealth* v. *Lane*, 113 Mass. 458.[1] Chief Justice Grey said two classes of marriages were not allowed any validity,—one which was deemed contrary to the law of nature, and one which the legislature declares shall not be allowed any validity because contrary to the policy of our laws. This view was also taken in *Brook* v. *Brook*, 9 H. L. Cas. 193. The case has been much criticised, but it seems to me the criticism could much more properly be aimed at the singular act of Parliament which the court was called upon to construe. It is clear that the common ideas of Christendom as to what should constitute incest are not binding upon any nation. It may adopt its own view as to what marriages are incestuous. It was not the fault of the court that the statute declared the same relation incestuous under some circumstances and lawful under others. The statute in effect declared that certain marriages were opposed to good morals and to the policy of England, and the court sustained the law, while admitting that such marriages would be held good generally throughout Christendom. The principle is admitted everywhere. Furthermore, whatever may be said upon this subject will not affect the position here taken, that at the time of the Reno marriage the plaintiff was not an unmarried person.

My associates attach great importance to certain decisions of this court which hold that the parties are completely divorced as soon as the decree is rendered. It was because of these decisions that section 61 was amended. The evil effect of these cases is the evil at which the amendment was aimed. This is admitted, but my associates think it is only effectual to prevent these too hasty marriages within this state. The whole principle for which I contend is admitted by this position. The statute is practically made a part of each decree, but its effect is illogically limited to prohibiting marriages within the state, while admitting that the intent was to prohibit them everywhere. For it is said that by going out of the state they sought to evade our laws, and that an agreement to marry, made within the period during which marriage was prohibited, is against public policy, although the parties did

[1] 18 Am. St. Rep. 509.

not agree to marry within that period, nor within this state. The legislature then desired to prohibit such marriages between persons resident in this state, wherever they might be solemnized.  Otherwise, to marry in Nevada is not an evasion of our laws, and is not prohibited by the policy of the state.  If any reasonable construction will make the statute effectual, such construction should be given rather than one which will defeat the evident object of the legislature.  The construction I have suggested is that which has been given to statutes defining the effect of contracts.  They are construed as entering into and becoming a part of the contract.  It is said the statute is penal, and its effect must therefore be limited.  If I have correctly construed it, it is no more penal than is the statute which declares that other married persons are not competent to contract matrimony.

I cannot bring myself to believe that the order setting apart a homestead to plaintiff is an adjudication which precludes an inquiry into the validity of the marriage.  Admitting that the notice required and given for the probate of a will, or the grant of administration, brings all interested parties before the court, still the law gives them no right or opportunity to be heard in the matter of setting apart a homestead.  The probate law expressly declares that the order of distribution shall conclude all interested parties.  To obtain this a special notice is required, and all persons may come in and make known their claims, and all who show themselves interested may contest the heirship of any claimant, including the person claiming to be a widow, who under our law is an heir.  It cannot be that the *ex parte* order setting apart a homestead, where there is no provision made for a hearing at all, was intended to conclude upon final distribution other claimants who are thus brought in that they may be then heard upon the matter.

But the contention ignores the nature of a proceeding *in rem*.  There the court gets jurisdiction by having possession of the thing, and only has jurisdiction to dispose of the thing. Necessarily, where no one appears, and then as to those who do not appear, and actually raise a contest, the court can make no finding or enter any judgment which binds any one except in the disposition of the thing seized and possessed by the court or its officers.

HARRISON, J., dissenting.—For the purpose of ascertaining the will of the legislature upon any subject, all its provisions upon that subject must be considered together, and so far as possible harmonized. The provision in section 90 of the Civil Code, that a marriage may be dissolved by the judgment of a court of competent jurisdiction decreeing the divorce, as well as the provision in section 91, that the effect of the judgment is to restore the parties to the state of unmarried persons, must be read in connection with section 61. This section, as amended in 1897, is the latest expression of the legislative will in reference to the effect of a judgment of divorce, and is to be read in connection with the other sections that refer to the dissolution of a marriage. This amendment to the section places a limitation upon the effect of a decree of divorce in determining the *status* of the parties to the action, and suspends the operation of the decree for one year from the time it was rendered. Until then the proceedings for a divorce are inchoate and undetermined, and the parties to the action are still legally bound to each other as husband and wife, and their *status* or capacity for marriage is unchanged, whatever may be their social or individual relations to each other. By virtue of this provision courts are inhibited from granting a decree of divorce which will be immediately operative, or which can be final or effective until after the expiration of a year. The section is not to be construed as applying solely to marriages already dissolved, but as also declaring that until the expiration of a year from the time the decree of divorce is rendered the marriage is not dissolved. Reading the several sections together, they are to be construed as declaring that a marriage is dissolved only by death or by a decree of divorce that has been made at least one year, and that until it has been so dissolved a subsequent marriage contracted within that year by either spouse is illegal and void from the beginning.

This construction of the section is also in harmony with other provisions of the law of this state. At the time that the decree in the present case was rendered an appeal could be taken from the judgment within six months after its entry. Until that time had expired the action was deemed to be pending, and the judgment of divorce had not become operative. (Code Civ. Proc., sec. 1049.) In *Hills* v. *Sherwood*, 33 Cal. 478, the court said, in reference to the construc-

tion to be given to the language of a contract between parties, that a judgment "may be final as to the court which renders it without being final as to the subject-matter." In *In re Blythe*, 99 Cal. 475, this language of the court, as well as the above section 1049, was relied upon in support of the proposition that a judgment is not final with reference to the rights affected by the litigation, or so as to be admissible in evidence while an appeal can be taken from it. Under the same section, it was held in *Feeney* v. *Hinckley*, 134 Cal. 467,[1] that a judgment rendered in favor of a plaintiff for the recovery of money from the defendant does not create a cause of action in favor of the judgment creditor until after the time for an appeal therefrom has expired, even though no appeal be taken. By reason of the principle upon which these cases were decided, the judgment of divorce between the plaintiff and Smith would not be available to her in any civil action involving her *status* as an unmarried person, or upon any criminal prosecution for the violation of her obligation as a married woman and the wife of Smith, until the expiration of six months from its rendition.

It is not disputed that, if the marriage between the plaintiff and the deceased had taken place within this state at the time it was entered into in Nevada, it would have been void; but it is contended that, by reason of section 63 of the Civil Code, which provides that a marriage which is valid at the place where it is entered into will be held valid in this state, its validity cannot be questioned. Section 63, however, is only a statutory declaration of a long-established principle in reference to the validity of contracts,—viz., that a contract which is valid under the *lex loci* will be treated as valid by the *lex fori*. But a contract entered into in another state that is contrary to the policy of the laws of this state will not be enforced by the courts of this state, irrespective of whether it is contrary to the policy of the laws of the country where it was entered into. Especially will persons who are citizens of this state and domiciled therein not be permitted to go into another state for the purpose of entering into a contract which is forbidden by the laws of this state, and immediately return to this state and invoke the aid of our courts for the enforce-

[1] 86 Am. St. Rep. 290.

ment of that contract. Marriage is defined in section 55 of the Civil Code to be "a personal relation arising out of a civil contract," and the validity of that contract is to be determined by the same rules as is the validity of any other contract. Unless the contract is valid the personal relation of marriage has not been created. The question presented herein does not involve the legitimacy of the issue of a marriage entered into as was that of the plaintiff with the deceased, or the rights of third persons dependent upon the relation then created, or the violation of any of the laws of the state of Nevada, but whether a contract of marriage which is contrary to the policy of our laws, and which parties subject to those laws have sought to evade by going into another state for the purpose of entering into such contract, and immediately upon its execution returning to this state, can be made the basis of an action for enforcing a right which exists solely by virtue of that contract. The plaintiff is seeking to enforce for her own benefit a contract entered into by her which is contrary to the policy of the laws of this state and in intended disregard thereof, and must fail therein.

Certain cases were cited upon the argument wherein weight is given to the fact that it was determined there that the parties went to another state "for the purpose" of evading the laws of their own state, and the omission of the court to find that the parties herein went to the state of Nevada "for the purpose" of evading the laws of this state is relied upon in support of the appeal. The omission of the court, however, to make such a finding is immaterial. It sufficiently appears from the findings that the court did make that such was the purpose of the plaintiff and Wood. Their intermarriage within this state was forbidden by the laws of this state, and the court finds that at the time of their intermarriage they resided in and were domiciled in this state, and "that on the first day of January, 1898, the plaintiff and the said Wood, for the sole purpose of marrying each other, and without any intent to change their residence, went to Reno in the state of Nevada, and there married each other, and at once returned to their said residence in California and continued to reside there until the death of said Wood, as aforesaid." In the cases referred to the fact of such purpose was made by statute one of the elements for rendering the marriage void; but

even in the absence of such provision in the statute, courts will not aid parties in the enforcement of a contract which they have entered into in an intended violation of the laws of their own domicile. The plaintiff herein is not seeking to enforce any right which she claims by virtue of having been a resident of the state of Nevada at the time that the marriage was entered into, nor is she seeking to enforce under the principles of comity between the several states any rights acquired under the laws of the state of Nevada. She comes into court with the acknowledgment that the contract of marriage was contrary to the law of her domicile, and it clearly appears from the admissions made at the trial that she went to that state for the purpose of evading that law. The policy of the laws of a state is superior to any obligations of comity.

It thus appears that by the laws of this state the former marriage of the plaintiff to Smith was not "dissolved" at the time she was married to Wood, and that the plaintiff herein remained a married woman until the expiration of one year from the rendering of the decree of divorce from Smith. She was therefore incapacitated from contracting another marriage in any place, for if her former marriage with Smith was not dissolved in California, it was not dissolved in Nevada. The *status* of one who is married is not changed by going into another state, but accompanies the person wherever he goes. The provisions of section 63 have therefore no application, for it is not contended that the laws of Nevada permitted or recognized the validity of a marriage unless both of the parties were at the time unmarried persons. Parties who seek to establish the validity of a marriage in another state must be capable of contracting the marriage in that state, and must not have a husband or wife living at the time the marriage is contracted. The cases cited from New York and other jurisdictions, to the effect that a judgment of divorce in which the guilty party is prohibited from again marrying during the lifetime of the other does not render a marriage contracted by him in another state invalid, do not contravene this proposition. In those cases the marriage was dissolved when the decree of divorce was rendered, and by this dissolution of the marriage the *status* of both of the parties to the action was changed. The prohibition upon the guilty party was merely a penalty which had no extraterritorial effect.

For the foregoing reasons, as well as for those presented in the opinion of Mr. Justice Temple, the marriage entered into between the plaintiff and the deceased was illegal and void. The judgment and order should therefore be affirmed.

VAN DYKE, J., dissenting.—I dissent, and concur in the views expressed in the dissenting opinions of Mr. Justice Temple and Mr. Justice Harrison, in holding that the so-called Reno marriage was void, and should have been so declared.

Rehearing denied.