[L. A. No. 469.     Department Two.—August 9, 1898.]

HOMER NORMAN, Appellant, v. JANETTE THOMSON NORMAN, Respondent.

Marriage—Ceremony upon High Seas—Evasion of Statute.—A marriage ceremony performed upon the high seas by the captain of a vessel, between citizens and residents of California, who went there for the avowed purpose of evading the statute of the state requiring a license, and solemnization by an authorized person, and who returned immediately thereafter to this state, is illegal and void.

Id.—Law o. Place of Marriage—Domicile—Motives of Parties.—The rule that a marriage which is valid by the law of the place where it was constituted is valid everywhere, without regard to the law of the domicile of the parties or to their motives, applies only when it is sanctioned by the recognized law of the place of marriage. It does not apply when the parties seek marriage upon the high

seas, where no written law exists by which marriage can be solemnized, for the express purpose of evading the law of their domicile.

ID.—LAW OF THE SEA—COMMON LAW—ACT OF CONGRESS.—The law of the sea, as it may relate to the marriage of citizens of the United States domiciled in California, cannot be referred to the common law of England, any more than to the law of any other foreign country. It is not, and cannot be, regulated by any act of Congress.

ID.—BURDEN OF PROOF—VIOLATION OF LAW OF DOMICILE.—The burden of proof rests upon the party claiming the validity of a marriage upon the high seas, to show that it was administered under some recognized law; and if no such law is shown, the marriage will be held invalid if in violation of the law of the domicile of the parties.

ID.—LAW OF CALIFORNIA—SOLEMNIZATION ESSENTIAL.—Under the law of California, as amended in 1895, consent to marriage must be followed by a solemnization by a person authorized by section 70 of the Civil Code to solemnize marriages; and a marriage between citizens and residents of California, lacking such solemnization, is illegal and void.

APPEAL from a judgment of the Superior Court of Los Angeles County. M. T. Allen, Judge.

The facts are stated in the opinion.

Walter F. Haas, and A. M. Stephens, for Appellant.

The marriage on the high seas was valid, under the common law. (Civ. Code, sec. 63; U. S. Rev. Stats., secs. 722, 4086, 4290, 4311.) Marriage is a thing of natural right. (1 Bishop on Marriage and Divorce, sec. 35; 1 Cooley's Blackstone, 122, 123; Schouler's Domestic Relations, secs. 10, 13, 20.) Solemnization is not essential. (Schouler's Domestic Relations, secs. 26, 29; 1 Bishop on Marriage and Divorce, sec. 4377; 14 Am. & Eng. Ency. of Law, 514, 515; Reeves on Domestic Relations, 195.)

Davis & Rush, for Respondent.

Our statute must control the validity of marriages between citizens and residents of this state, without regard to the common law. (*Sharon v. Sharon*, 79 Cal. 633, 660; *Estate of McLaughlin*, 4 Wash. 570; *Beverlin v. Beverlin*, 29 W. Va. 732; *Dumas v. State*, 14 Tex. App. 464; 46 Am. Rep. 241.) The

state may make marriages between its citizens in violation of its statutes void, though contracted elsewhere. (*Kinney v. Commonwealth*, 30 Gratt. 858; 32 Am. Rep. 690; *Marshall v. Marshall*, 2 Hun, 238; *Van Voorhis v. Brintnall*, 23 Hun, 260.) Congress can only regulate the marriage contract in places belonging to its exclusive jurisdiction. (2 Wharton's International Law, secs. 261, 738, 746, 754.) The law of the domicile of the parties invalidates a marriage made in intended evasion thereof. (*Le Breton v. Nouchet*, 3 Mart. (La.) 60; 5 Am. Dec. 736; *Holmes v. Holmes*, 1 Abb. (U. S.) 525, 546.) The law of each state operates on the high seas as between its citizens, in a vessel owned in the state. (Wharton's International Law, 8th ed., sec. 106, et seq; 1 Kent's Commentaries, 26; *Crapo v. Kelly*, 16 Wall. 610.)

CHIPMAN, C.—Action to have a certain marriage between plaintiff and defendant declared valid and binding upon the parties. A second amended complaint alleged that on August 2, 1897, defendant was a minor of the age of fifteen years and ten months, and that her father, one A. C. Thomson, was her natural and only guardian; plaintiff was of the age of twenty-one years and ten months, and that both plaintiff and defendant were citizens and residents of Los Angeles county, California; on said day plaintiff and defendant, at Long Beach, on the coast of California, boarded a certain fishing and pleasure schooner of seventeen tons burden, called the "J. Willey," duly licensed under the laws of the United States, of which W. L. Pierson was captain, and was enrolled as master thereof, and had full charge of said vessel; said vessel proceeded to a point on the high seas about nine miles from the nearest point from the boundary of the state and of the United States; the parties then and there agreed, in the presence of said Pierson, to become husband and wife, and the said Pierson performed the ceremony of marriage, and among other things they promised in his presence to take each other for husband and wife, and he pronounced them husband and wife; neither party had the consent of the father or mother or guardian of defendant to said marriage; on the same day and immediately after said ceremony the parties returned to the county of Los Angeles, and have ever since resided there, and they then and there imme-

diately began to live and cohabit together as such husband and wife, and continued so to do until the tenth day of August, 1897; said marriage has never been dissolved; defendant denies the validity of said marriage and refuses to join in a declaration thereof.

Defendant, by her guardian *ad litem,* admits the allegations of the complaint, and alleges that in having the ceremony performed as alleged plaintiff and defendant did so with the intent and for the purpose of evading the statutes of the state prescribing the manner in which marriages shall be contracted and solemnized. She prays that the said pretended marriage be declared illegal and void, and that plaintiff be precluded and estopped from ever setting up or asserting or claiming to be the husband of defendant. The court found all the allegations of the complaint and answer to be true, and as conclusion of law found that plaintiff was not entitled to the relief claimed, but that the said pretended marriage was illegal and void, and judgment was entered accordingly.

The appeal is from the judgment. The action is brought under section 78 of the Civil Code. It must be conceded that the question presented by this appeal is one of much importance, whether viewed in its relation to society or to the parties only.

Appellant contends: 1. That the marriage is valid because performed upon the high seas; and 2. That it would have been valid if performed within this state, because there is no law expressly declaring it to be void. Respondent presents the case upon two propositions, claiming: 1. That no valid marriage can be contracted in this state except in compliance with the prescribed forms of the laws of this state; and 2. That citizens and domiciled residents cannot go upon the high seas for the avowed purpose of evading the law of this state, and contract a valid marriage.

Sections 722, 4082, and 4290 of the Revised Statutes of the United States are cited by appellant as recognizing marriages at sea and before foreign consuls, and that section 722 declares the common law as to marriage to be in force on the high seas on board American vessels. We have carefully examined the statutes referred to and do not find that they give the slightest support to appellant's claim.

The law of the sea, as it may relate to the marriage of citizens of the United States domiciled in California, cannot be referred to the common law of England any more than it can to the law of France or Spain or any other foreign country. We can find no law of Congress, and none has been pointed out by appellant, in which the general government has undertaken or assumed to legislate generally upon the subject of marriage on the sea. Nor, indeed, can we find in the grant of powers to the general government by the several states, as expressed in the national constitution, any provision by which Congress is empowered to declare what shall constitute a valid marriage between citizens of the several states upon the sea, either within or without the conventional three mile limit of the shore of any state; and clearly does no such power rest in Congress to regulate marriages on land except in the District of Columbia and the territories of the United States, or where it possesses the power of exclusive jurisdiction. We must look elsewhere than to the acts of Congress for the law governing the case in hand. Section 63 of the Civil Code provides as follows: "All marriages without this state, which would be valid by the laws of the country in which the same were contracted, are valid in this state." The parties in the present case were residents of and domiciled in this state and went upon the high seas to be married with the avowed purpose of evading our laws relating to marriage. It seems to be well settled that the motive in the minds of the parties will not change the operation of the rule. Chief Justice Gray, in *Commonwealth v. Lane*, 113 Mass. 458, 18 Am. Rep. 509, said: "A marriage which is prohibited here by statute, because contrary to the policy of our laws, is yet valid if celebrated elsewhere according to the law of the place, even if the parties are citizens and residents of this commonwealth, and have gone abroad for the purpose of evading our laws, unless the legislature has clearly enacted that such marriages out of the state shall have no validity here." This has been repeatedly affirmed by well-considered decisions. The authorities are found fully reviewed in that case, as they also will be found in support of the general rule in *Milliken v. Pratt*, 125 Mass. 374, 28 Am. Rep. 241, by the same learned jurist. (See, also, as to marriages in evasion of the law of the

domicile of the parties, Bishop on Marriage and Divorce, sec. 880, et seq.)  If the marriage in question can find support by the laws of any country having jurisdiction of the parties at the place where the marriage ceremony was performed, we should feel constrained by our code rule and well-considered decisions to declare it valid here, even though the parties were here domiciled at the time and went to the place where they attempted to be married for the purpose of evading our laws which they believed forbade the banns.  But the parties did not go to any other state or country to be married.  They went upon the high seas where no written law, of which we have any knowledge, existed by which marriage could be solemnized.  The rule, therefore, that the law of the place must govern does not operate, because there was no law of the place unless we may hold that the law of the domicile applies.  The question presented is *res integra* so far as we have been able to discover; and no case in England or the United States or elsewhere has been found by counsel (and their briefs disclose much research and industry) holding that the code rule *supra* applies to such a marriage as this.  In the case of *Holmes v. Holmes,* 1 Abb. (U. S.) 525, the question was whether a marriage had been contracted under the laws of California or Oregon.  It seems that the parties, who were domiciled in Oregon, met in San Francisco and there took passage on the steamer for Portland. It was at the trial suggested that the marriage might have taken place on board this vessel when on the high seas.  There was no evidence that the parties ever met elsewhere, except in California and Oregon.  In the opinion by Deady, J., it was said, after showing that there was no valid marriage under the laws of either of these states: "Nor do I think that citizens of this state [Oregon], as the complainant and deceased were, can purposely go beyond its jurisdiction, and not within the jurisdiction of another state—as at sea—and there contract marriage contrary to its laws.  Such an attempt to be joined in marriage is a fraudulent evasion of the laws to which the citizen of the state is subject and owes obedience, and ought not to be held valid by them."  It is said by appellant that this expression of opinion is but *dictum,* inasmuch as the question did not necessarily arise.  This may be true, but it commends

itself to our judgment as wise and sound upon reason and principle. We find no case holding that parties domiciled in a state may, for the avowed purpose of evading its laws, go where no law exists and there consummate marriage in violation of the laws of their domicile, and immediately return and claim a valid marriage. In all the cases where the statutes have been thus circumvented it was accomplished by a marriage valid in the place where celebrated. The Gretna Green marriages of Scotland between citizens of England are notable examples, and they were upheld by the ecclesiastical courts. But these marriages were solemnized in accordance with the laws of Scotland, and therefore had legal sanction; and so also marriages in this country of citizens of one state going into another to avoid some disqualification prescribed in the law of their domicile.

It has been properly held that, as marriage is a natural right of which no government will allow its subjects, wherever abiding, to be deprived, if the parties happen to be sojourning in a foreign country, and under the local law there is no way by which they can enter into valid marriage, they may marry in their own forms and it will be recognized at home as good. (Bishop on Marriage and Divorce, sec. 890, et seq.) But this author says: "In reason, for we have probably no adjudications of the question, a marriage void by the law of the place of its celebration, in a case where such law provides no valid method, would not be made good by the rule we are considering if the parties went there simply to avoid compliance with the law of their domicile. There was no necessity; for their own law was open to them at home, and it would not assist them in eluding its inhibitions." And he refers to the case of *Holmes v. Holmes, supra,* remarking: "It would, perhaps, be the same also where the resort was, for the like purpose, to an uninhabited region of the high seas." In the case before us, the parties not only went where there was no law authorizing the marriage, but they went with the intention of immediately returning to their domicile where they supposed the law would not admit of their marriage, to enjoy the fruits of their contract. There was no necessity upon the parties to do this suddenly arising, or arising from unexpected surrounding circumstances, but the circumstances were of their own creation and for a pur-

pose to evade the law of their home.   There is, we conceive, no ground of expediency, sound policy, or good morals upon which the transaction can be given legal sanction.   In summing up the doctrine Mr. Bishop says (Bishop on Marriage and Divorce, sec. 920): "Therefore the rule necessarily is, that whenever a marriage is entered into, so that the laws of one country take cognizance of it, it will be accepted as a marriage in every other country also; on the other hand, no forms matrimonial which come short of constituting valid marriage in the one country will so bring it within the cognizance of international law as to make it valid elsewhere."   We think it results from considerations of reason and principle that unless it appears that this marriage was consummated under some recognized law the courts of this state should not declare it valid; and we think the burden is upon appellant to show such a law, failing in which his suit must fail.   The authorities are many to the point that the party who relies upon the foreign law, or law of another state, must prove the law by its production.   (Stewart's Marriage and Divorce, sec. 119, cases cited.)

Respondent cites the case of *Crapo v. Kelly*, 16 Wall. 610, where it was held that, in the case of an assignment in insolvency in the state of Massachusetts, it carried with it a vessel then in the Pacific Ocean; and in an elaborate opinion it was shown that, except for the purposes and to the extent that certain attributes have been transferred to the United States by the several states of the Union, each possesses all the rights and powers of a sovereign state, and that the vessel in question was a part of the territory of the state of Massachusetts, although at the time in the Pacific Ocean, and that the laws of Massachusetts would govern the assignment.   It is hence argued by respondent that the law of the domicile in the present case should govern.   There is much force in this position, but we do not deem it necessary to place our decision on that ground.   We think the law of the domicile of the parties must be the law by which to judge the validity or invalidity of this marriage upon the grounds already stated.

We are thus brought to the only remaining question: Was the marriage valid tested by the laws of California?

If this marriage can be upheld, it must be upon the sole ground that there was mutual consent, solemnization by a sea

captain, and subsequent cohabitation as husband and wife for the space of eight days. What constituted marriage in this state, prior to the amendments of the code in 1895 and 1897, has been pretty well settled and need not be restated here. In the light of the history of past litigation, it ought not to be difficult to determine what is a valid marriage under existing law. Section 55 of the Civil Code, as amended in 1895, provided as follows: "Marriage is a personal relation arising out of a civil contract, to which the consent of the parties capable of making that contract is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization authorized by this code." No particular form of solemnization is required, "but the parties must declare, in the presence of the person solemnizing the marriage, that they take each other as husband and wife." (Civ. Code, sec. 71.)

Section 70 of the Civil Code provides as follows: "Marriage may be solemnized by either a justice of the supreme court, judge of the superior court, justice of the peace, priest, or minister of the gospel of any denomination." Prior to the amendment of 1895 the consent to marriage was required to be followed either by "a solemnization, *or by a mutual assumption of marital rights, duties, or obligations.*" (Civ. Code, sec. 55.) The amendment added the words "authorized by this code" after the word "solemnization" and struck out the words above in italics.

It seems to me that the intention of the legislature is plainly declared that consent must be followed by such solemnization as is authorized by the code or there can be no valid marriage; and that this solemnization can only be performed by the persons mentioned in section 70, *supra,* for no other persons are so authorized. Prior to 1895 section 75 of the Civil Code provided for marriages by declaration without the solemnization required by section 70, but the act of March 26, 1895, swept away that easy process of marriage. Section 68 of the Civil Code was also amended in 1895 in an important particular. It now reads: "Marriage must be licensed, solemnized, authenticated, and recorded as provided in this article; but noncompliance with its provisions *by other than the parties to a marriage* does not invalidate that marriage." The words in italics were added to the section as it formerly stood, and would seem to imply that,

while there may be noncompliance with the law by parties other than those seeking marriage, there cannot be by the latter. Section 76 of the Civil Code now, as heretofore, makes provision for supplying the evidence of marriage where no record of the solemnization is known to exist; and a form of written declaration is prescribed. A new section, 79½, was added to the Civil Code in 1897, which provides that "the provisions of this chapter, so far as they relate to procuring licenses and the solemnizing of marriage, are not applicable to members of any particular religious denomination having, as such, any peculiar mode of entering the marriage relation; but such marriages shall be declared as provided in section 76 of the Civil Code of this state, and shall be acknowledged and recorded as provided in section 77 of said Civil Code." Section 69 of the Civil Code provides that: "All persons about to be joined in marriage must first obtain a license therefor from the county clerk of the county in which the marriage is to be celebrated, showing." . . . . Then follow certain facts which must appear, such as names, identity, and ages of the parties, etc. When a marriage may not be invalidated although there has been noncompliance with the provisions of article 2, sections 68-79½, "by other than the parties to the marriage" need not now be determined. In this case there was no license, there was no solemnization by any person authorized by law to perform the ceremony, there was no marriage under section 79½. To recognize such a marriage we think would grossly violate the spirit and letter of our statute and be a blot upon the civilization we profess. To give the law any just interpretation we must hold that, subject to the exception mentioned in section 79½, section 55 requires not only the consent of parties capable of making a contract of marriage, but that that consent must be followed by a solemnization authorized by the code, and this solemnization can only be performed by the persons named in section 70. We do not think it necessary to decide whether it is mandatory to obtain a license; nor whether the minority of the defendant and want of consent of her parents or guardian would invalidate the marriage. Our conclusion rests upon the want of any authorized solemnization and would be the same if the parties were both of full age. We recommend that the judgment be affirmed.

Belcher, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.          McFarland, J., Temple, J., Henshaw, J.