[S. F. No. 15164.   In Bank.—May 27, 1936.]

ALECIA McDONALD, Respondent, v. JAMES McDONALD III, Appellant.

458

Hester W. Webb and Joseph W. Bingham for Appellant.

Edward West, Silas W. Mack, John Milton Thompson and John E. Gunther, as *Amici Curiae* on Behalf of Appellant.

C. Harold Caulfield and Edward D. Keil for Respondent.

LANGDON, J.—In an action by the wife for separate maintenance, the husband filed a cross-complaint for an annulment of the marriage upon the ground that at the time of the marriage the defendant and cross-complainant was a minor, eighteen years of age, and, therefore, under the legal age of consent. The trial court sustained the wife's demurrer to the cross-complaint, without leave to amend. From the judgment entered in favor of the plaintiff wife, the defendant husband appeals.

The parties married in the state of Nevada, the husband being at that time but eighteen years of age and the wife but sixteen years old. Neither had the consent of parent or guardian. If the marriage had taken place in this state, it would have been subject to annulment for failure of the parties to procure such consent. (Civ. Code, sec. 82, subd. [1].) But the marriage was valid in Nevada. The statute of that state relating to marriage and divorce (Compiled Laws of Nevada, 1861–1900, sec. 2, p. 112) provides, in so far as

is material here, "that male persons under the age of 21 years and female persons under the age of 18 years", in order to marry, shall first obtain the consent of parents or guardians. The Supreme Court of Nevada, construing the statute, held that, notwithstanding the proviso, as the statute did not expressly, nor by implication, render a marriage in disregard of its prescribed formalities void, a marriage entered into in that state while the parties were under the prescribed ages and without the required consent is, nevertheless, a valid binding contract. (*Fitzpatrick* v. *Fitzpatrick*, 6 Nev. 63.) Later, the court, affirming that decision, again held that such a marriage is valid. (*State* v. *Zichfeld*, 23 Nev. 304 [46 Pac. 802, 62 Am. St. Rep. 800, 34 L. R. A. 784].)

Section 63 of the Civil Code of California provides: "All marriages contracted without the state, which would be valid by the laws of the country in which the same were contracted, are valid in this state." Consequently, the marriage of these parties, being a valid marriage in the state of Nevada, is a binding and valid marriage in this state.

■ Appellant seeks to avoid the application of the cited Nevada cases to his case on the ground that the parties there involved were residents of that state, and had not gone to Nevada for the purpose of evading the laws of another state. Even though the parties here, residents of and domiciled in California, went to the state of Nevada to be married, and with the avowed purpose of evading our laws relating to marriages, such a motive, if in the minds of the parties, would not change the operation of the well-settled rule that a marriage which is contrary to the policies of the laws of one state is yet valid therein if celebrated within and according to the laws of another state. That question is persuasively discussed in *Norman* v. *Norman*, 121 Cal. 620, 624 [54 Pac. 143, 66 Am. St. Rep. 74, 42 L. R. A. 343]. Motive in the minds of parties will not change the operation of the rule. (*Commonwealth* v. *Lane*, 113 Mass. 458 [18 Am. Rep. 509].) ■ Each state may follow its citizens into another state and regulate the status of its own citizens, especially such a status as the marriage relation. For an example of such legislation relating to marriages, see General Statutes of Massachusetts, chapter 106, subdivision 6. The legislature of California has not enacted a statute that such marriages shall have no validity here. In the absence of such a statute of the domicile of the

parties, expressly and clearly regulating marriages abroad, the *lex loci contractus* governs as to the validity of the marriage. An exception, of course, arises when the marriage is regarded as odious by common consent of nations, e. g., where it is polygamous or incestuous by the laws of nature. (*In re Seymour*, 113 Misc. 421 [185 N. Y. Supp. 373, 381], wherein a careful consideration of this subject will be found.) A helpful discussion of these phases of the question will be found in Bishop on Marriage and Divorce, sections 879–885, inclusive. See, also, Restatement of the Law of Conflict of Laws, section 121, and comments.

The two decisions of the Nevada court, *supra*, must be given full weight in considering the question here. The contention of appellant that they pertain only to divorce actions is set at rest by the language of the court, particularly in the Zichfeld case, *supra*.

Appellant further asserts, however, that even if the marriage was valid in Nevada, and, under section 63 of the Civil Code, valid in this state, nevertheless, the parties, being citizens and residents of this state, the provisions of section 82 of the Civil Code are applicable, and that the marriage is, therefore, subject to being annulled, the same as any other "valid" California marriage which falls within the purview of section 82 of the Civil Code. This argument is predicated upon certain language appearing in some of the California cases to the effect that as to marriages performed in California of persons under the legal age of consent, without the consent of parents or guardians, such marriages are "legal" or "valid for all purposes" until annulled. (*In re Ambrose*, 170 Cal. 160 [149 Pac. 43]; *Campbell* v. *Campbell*, 78 Cal. App. 745 [248 Pac. 762]; *People* v. *Souleotes*, 26 Cal. App. 309 [146 Pac. 903].) All that was intended by that language was that such marriages are voidable and not void. This does not mean that in determining whether a particular marriage contract is voidable, the law of the forum is decisive and that the law of the place of contract is to be disregarded.

Appellant's argument overlooks the nature of an annulment proceeding. A marriage cannot be annulled unless there was something legally wrong with it in its inception. Under the very language of section 82 of the Civil Code, an annulment is granted for causes "existing at the time of the marriage". A marriage valid in all respects when contracted can never be

annulled. The meaning of the phrase ''good until annulled'' or ''valid until annulled'', used in the above cases, is simply that in the case of voidable marriages (as distinguished from void marriages) a right of action to dissolve it for some cause existing at the time the marriage was contracted, has no effect on the relationship until such right is exercised. A familiar analogy exists in the law of contracts. Thus a contract may be voidable and subject to rescission, because of some infirmity in its procurement, but, unless attacked by notice of rescission or by suit, will not be avoided, but will remain binding. (*Garcia* v. *California Truck Co.*, 183 Cal. 767 [192 Pac. 708].) So with voidable marriages. The parties may or may not exercise their legal right to have them annulled and if they do not exercise such right, the marriages are binding; but, when annulment is sought, it can be granted only if there was some element of invalidity in the contracting of the marriage. Thus, in *Millar* v. *Millar*, 175 Cal. 797, 806 [167 Pac. 394, Ann. Cas. 1918E, 184, L. R. A. 1918B, 415], it is stated:

''Strictly speaking, the word 'divorce' means a dissolution of the bonds of matrimony, based upon the theory of a valid marriage, for some cause arising after the marriage, while an annulment proceeding is maintained upon the theory that, for some cause existing at the time of marriage, no valid marriage ever existed. This is true even though the marriage be only voidable at the instance of the injured party, or, in the words used in *Estate of Gregorson*, 160 Cal. 21, 25 [Ann. Cas. 1912D, 1124, L. R. A. 1916C, 697, 116 Pac. 60], 'capable of being annulled'. And the decree of nullity in such a proceeding determines that no valid marriage ever existed. . . . ''

See, also, Goodrich, Conflict of Laws, page 302.

If we were to hold, in accordance with appellant's present contention, that, even though this marriage was valid in all respects in Nevada and, therefore, under section 63 of the Civil Code, valid in all respects here, but could be annulled for causes provided by our law, but not permitted by Nevada law, we would be holding that, although this marriage was valid in all respects, nevertheless, it was a marriage which never existed. Such a doctrine would repudiate not only the entire concept of annulment, but would also indirectly repudiate the doctrine of conflict of laws, universally recognized and embodied in section 63 of the Civil Code.

The Restatement of the Law of Conflict of Laws, section 136, expressly covers the situation we are here considering

and embodies what we consider to be fundamental and universally accepted concepts. It provides:

"The law governing the right to a decree of nullity is the law which determined the validity of the marriage with respect to the matter on account of which the marriage is alleged to be null".

On page 174, in connection with section 115, the Restatement comments:

"A decree of nullity from the beginning is not a dissolution of the marriage but is a judicial declaration that no marriage has ever existed. Therefore, in determining whether such a decree will be rendered, the court at the forum will be governed by the principles of the marriage law of the state which under the appropriate Conflict of Laws rule, determines the validity of the marriage in question. Under the rule stated in section 121 a marriage is in most particulars governed by the laws of the place of marriage; and if invalidity is claimed in one of these particulars the decree of nullity will be granted only upon the application of the principles of marriage law of that state".

See, also, *Pearson* v. *Pearson,* 51 Cal. 120; *Norman* v. *Norman,* 121 Cal. 620 [54 Pac. 143, 66 Am. St. Rep. 74, 42 L. R. A. 343].

If appellant's contention were to prevail, it would necessarily follow that an ordinary private contract entered into in New York and valid for all purposes in that state, would be "valid" here, but still could be rescinded here for grounds existing under our law and not existing under New York law. It would also follow that, in the law of torts, although an action could be maintained in this state by a guest against his host on a tort committed in another state, where the right of action is recognized by the law of that other state, nevertheless, the defendant may defend that under the law of the forum recovery is denied, thus repudiating such cases as *Loranger* v. *Nadeau,* 215 Cal. 362 [10 Pac. (2d) 63, 84 A. L. R. 1264]. Examples could be multiplied. Under appellant's reasoning, by recognizing the validity of the foreign law until the subject reaches our borders, and then denying the validity previously recognized, we would effectually eliminate from our jurisprudence the entire field of Conflict of Laws.

The other points raised do not warrant discussion.

The judgment is affirmed.

Curtis, J., Conrey, J., and Thompson, J., concurred.

WASTE, C. J., Concurring and Dissenting.—I concur and dissent.

I concur in the conclusion announced in the majority opinion, that the marriage of these parties was a valid marriage in the state of Nevada. I do not agree that such marriage is immune from attack under the provisions of section 82 of the Civil Code, which provides that marriages may be annulled for the causes there specified. Were we here dealing with an ordinary contract, the conclusion reached by the majority of the Justices would find support; but we are dealing with a marriage contract, a contract of exceptional nature, which relates to the status of the parties to the contract, a status in which the state of California is primarily interested. I am of opinion that the language in the cases has a wider meaning and, in view of the fact that it relates to the marital status of citizens of the state, is subject to a different interpretation than that given to it by the other opinion. That language is to the effect that, as to marriages performed in California of persons under the legal age of consent, without the consent of parents or guardians, such marriages not having been declared by law to be illegal are legal and valid for all purposes *until annulled*. (*In re Ambrose,* 170 Cal. 160 [149 Pac. 43] ; *Campbell* v. *Campbell,* 78 Cal. App. 745 [248 Pac. 762] ; *People* v. *Souleotes,* 26 Cal. App. 309 [146 Pac. 903] ; 16 Cal. Jur., p. 913.)

Neither the state of Nevada nor the state of California has declared marriages contracted in the respective states by persons under the age of consent, without the prescribed consent of parents or guardians, to be illegal. Consequently, such marriages are valid, even though, it has been held, disobedience of the statute may entail penalties on the licensing or officiating parties. (*In re Ambrose, supra.* See, also, 2 Schouler on Marriages and Divorce, 6th ed., sec. 1122.)

I am of the view that the parties contracted a marriage legal and binding until annulled or dissolved. Section 82 of the Civil Code, relating to marriages contracted as this one was, presupposes that they may, on proper grounds, be annulled and set aside. California, by enactment of section 63 of the Civil Code, accords full recognition to the rules and laws of comity by providing that this marriage, valid in Nevada, is valid here. This state, however, has exercised its unquestioned prerogative to legislate concerning the

marital status of its citizens domiciled here by expressly providing that such marriages may be annulled when the proper ground is established.

The demurrer of plaintiff to defendant's cross-complaint was improperly sustained, and the judgment should have been reversed.

Shenk, J., concurred.

Rehearing denied. Waste, C. J., Shenk, J., and Nourse, J., *pro tem.*, voted for a rehearing.