UNITED STATES v. BARRONS et al.
No. 28764.

United States District Court,
N. D. California, S. D.
June 30, 1950.

---

12. 2 Cir., 179 F.2d 306.

Frank J. Hennessy, U. S. Attorney, San Francisco, Cal., R. J. Scholz, Ass't U. S. Attorney, San Francisco, Cal., attorneys for plaintiff.

Todd & Todd by Gordon W. Mallatratt, San Francisco, Cal., for defendant Albert Barrons.

Johnston, Baker & Palmer by Oran W. Palmer, Bakersfield, Cal., for defendant June Alger Barrons.

HARRIS, District Judge.

The United States of America has commenced this action against Albert Benjamin Barrons and June Alger Barrons in order to ascertain which of the named defendants is entitled to the proceeds of a National Service Life Insurance policy, taken out by William J. Barrons, deceased.

The parties to the litigation have stipulated to the facts as follows:

(1) June Alger and William J. Barrons, while serving in the Armed Forces of the United States were stationed at Hammer Field, California, during the winter of 1943 and spring of 1944.

(2) William J. Barrons left under military orders for Africa on April 15, 1944.

(3) By letter, Barrons learned that June Alger was pregnant and, through an exchange of cables and letters, arranged a proxy marriage. Because of the war and difficulty attached to undertaking such a marriage at Sardinia, where Barrons was stationed, matrimonial proceedings were carried out by June Alger in Reno, Nevada.

(4) On July 15, 1944, Barrons wrote as follows: "I do hereby authorize June Alger to carry out a proxy marriage between her and myself and involving the use of a stand-in as required by the Nevada state law".

(5) The American Red Cross made the necessary arrangements whereupon June Alger went to Reno, Nevada on July 20, 1944, obtained a license and was married before Reverend James A. White, a Baptist minister, with a representative of the American Red Cross acting as proxy and stand-in for William J. Barrons. The marriage certificate was recorded on July 21, 1944 in Book 92, Marriages, page 109, Records Washoe County, Nevada.

(6) By cable Lt. Barrons was notified of completion of the ceremony and replied by letter, dated July 25, 1944. On the following day Barrons designated June Alger Barrons, wife, as beneficiary on his National Service Life Insurance Policy.

(7) On July 27, 1944, Barrons was killed in military action.

(8) On November 4, 1944, June Alger Barrons filed a claim for the proceeds of the insurance policy. Thereafter, the Veterans Administration made monthly payments to her in the amount of $55.10, commencing July 27, 1944, and continuing until April 26, 1948. Suspension of payments was caused by reason of the proxy marriage, the validity of which was challenged by Albert Benjamin Barrons and his wife, who had been designated beneficiaries prior to the marriage and change order, effected by their son.

(9) No children were born of the marriage between William J. Barrons and June Alger Barrons.

At the outset it should be noted that the Veterans Administration is prepared to make payments to the widow of William J. Barrons if the Court sustains the proxy marriage for insurance purposes. (See Opinion on Proxy Marriage, Bulletin #33, War Dept., Washington 25, D. C. 6 Dec. 1946; Legal Assistance Digest, Office of the Judge Advocate General, Department of the Army, 1 Sept. 1949, page 1). If the marriage was valid or voidable, then June Alger Barrons was the widow of William

J. Barrons at the time of his death and **is** entitled to the policy payments.[1]

■ Since the marriage ceremony, which united William J. Barrons and June Alger as husband and wife, took place in Reno, Nevada, we must look to the law of that state to determine the validity of the proxy marriage. Kane v. Johnson, D.C., 13 F.2d 432.

Under Nevada law no provision is made by statute for proxy marriages. Until 1943 common law marriages were legal in that state, but since that year, under Sec. 4050 of Nevada Compiled Laws, N.C.L.1931–1941 Supp. § 4050, common law marriages are no longer authorized. However, as the court stated in Kane v. Johnson, supra, there is a difference between an informal agreement between a man and woman to become husband and wife and a formal ceremony between one spouse and a proxy for the other spouse. In the absence of an express provision included under Sec. 4050 of the Compiled Laws, there is no basis for holding that Nevada has declared proxy marriages invalid. The contrary would appear to be the case by reason of the language contained in Sec. 4061 of the Compiled Laws of Nevada, N.C.L.1929, § 4061: "Want of Power Unknown.—Marriage Valid. § 13. No marriage solemnized before any person professing to be a judge, justice, or minister, shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected on account of any want of jurisdiction or authority, provided it be consummated with a full belief on the part of the persons so married, or either of them, that they have been lawfully joined in marriage."

June Alger Barrons, with her betrothed's consent and direction, went through a marriage ceremony before a minister and both she and her husband relied on the validity of the ceremony and fully believed that they had been lawfully joined in marriage. Through the good offices of the Red Cross the entire performance was arranged in order to unite two young people who intended to be married and believed they were married by the completion of the proxy ceremony which would legitimatize the baby which June Alger Barrons expected.

In determining whether the widow of William J. Barrons is entitled to receive insurance proceeds as the named beneficiary of her husband, the Court should be guided, where possible, by principles which will establish Federal uniformity. As stated by Judge Morton in Kane v. Johnson, supra, "questions of this character are essentially federal, and ought, if possible, to be decided upon principles of law uniformly applicable throughout the country." In this instance, the law of Nevada no longer authorizes common law marriages but it is silent as to the status of proxy marriages. Such marriages are different from common law cohabitation; proxy marriages have legal sanctity attached to them by reason of the formality and solemnity of the proceedings which are performed by a public official.

It is public policy to sustain marriages which are entered into in good faith. Respole v. Respole, Ohio Com.P., 70 N.E.2d 465, 170 A.L.R. 943. The law of Nevada itself upholds a solemnized marriage entered into with a belief by either party in its lawfulness, Compiled Laws, Sec. 4061, supra.

■ Under the facts as established by the parties, this Court finds and concludes that at the time of the death of William J. Barrons, June Alger Barrons was his wife and designated beneficiary under the National Service Life Insurance policy and, as such, was and is entitled to the proceeds of such policy.

Plaintiff shall prepare Findings of Fact and Conclusions of Law in accordance with this Opinion.

---

1. Such would be the case whether she and her husband were deemed residents of California Estate of Gosnell's 63 Cal. App.2d 38, 46 P.2d 42; McDonald v. McDonald, 6 Cal.2d 457, 58 P.2d 163, 104 A.L.R. 1290, or whether June Alger Barrons were deemed a resident of Texas, in which state common law marriages are valid (170 A.L.R. 949; Opinion of the Attorney General of Texas #0–7529 (1946).