**John Roland PHELPS, Appellant,**
v.
**UNITED STATES of America, Appellee.**
**No. 16479.**

United States Court of Appeals
Fifth Circuit.
Feb. 14, 1958.

Wellington Chew, George Rodriguez, El Paso, Tex., for appellant.

Holvey Williams, Asst. U. S. Atty., El Paso, Tex., Russell B. Wine, U. S. Atty., San Antonio, Tex., James E. Hammond, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Appellant, John Roland Phelps, was convicted of smuggling marihuana into the United States. The indictment, citing 21 U.S.C.A. § 174,[1] charged that

---

1. 21 U.S.C.A. § 174 makes it a crime to bring "any narcotic drug" into the United States contrary to law. 21 U.S.C.A. § 176a relates specifically to smuggling marihuana: "Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, * * * shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as deter-mined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned for not less than ten or more than forty years and, in addition, may be fined not more than $20,000." § 176a became effective, in its present form, July 18, 1956, approximately one month prior to the date of the smuggling charged in the indictment. The error in the statutory reference, if it was an error, could not have misled the defendant. It was not, therefore, a ground for reversal. Rule 7(c), Federal Rules of Criminal Procedure, 18 U.S.C.A.

Phelps, "on or about August 15, 1956, in El Paso County, Texas, * * * with intent to defraud the United States, knowingly smuggled and clandestinely introduced into the United States two pounds and seven ounces of marihuana, which had not been invoiced as required by law". Phelps was convicted in 1938 and in 1952 for smuggling narcotic drugs into the United States in violation of 21 U.S.C.A. § 174. On this third conviction he was sentenced to ten years imprisonment as a multiple offender.

## I.

The government's case depends on the weight to be given the testimony of one witness—Grace Moss, appellant's paramour. In some states she would qualify as his common-law wife.[2]

Grace Moss testified that she and Phelps had been living together for a number of years in Illinois and in California. Around the middle of August, 1956, they spent several days in Juarez, Mexico and in El Paso, Texas. While in Juarez she purchased blouses, skirts, and other articles of clothing. She gave these to Phelps to take care of since at that time they had no hotel room in El Paso and they were to return separately to the United States. Later Phelps rejoined her in her hotel in El Paso in a room registered in the name of Mr. and Mrs. J. W. Moss. Phelps told her that, not wanting to stop at the International Bridge, he had given her packages to someone else to bring over and that her purchases were in a locker box at the railroad station. According to her testimony, Phelps asked her to take the locker key that was on their dresser, go to the station, and bring back a package he had in the locker For this reason, and thinking, so she said, that she would retrieve her purchases, Miss Moss picked up the key and went to the station.

She opened the locker and took out a small package, several inches square in size. No other packages, no clothes were in the locker. At this point government agents waiting nearby appeared and took possession of the package. Griffin, government agents and the only other witness to testify, said that when they stopped Miss Moss and identified themselves "she became very nervous and very, very upset". Griffin had been informed that an American man and woman had been in Juarez purchasing narcotics and that "someone would pick up a package at the union depot from locker 475". The government agents and Miss Moss hastened to her hotel room, the room registered in the name of Mr. and Mrs. J. W. Moss. The door was ajar, men's clothes were in the room, a man's watch was on the dresser. The owner of the watch, presumably Phelps, had left in a hurry. The agents were unable to find out definitely who had been in the room. Phelps was picked up weeks later. He did not testify. Griffin testified that the package contained what he knew to be marihuana.

Grace Moss admitted that at the time she was living with Phelps in Juarez and in El Paso she was using narcotics

2. At the beginning of the trial appellant's counsel, examining Miss Moss on *voir dire*, attempted to prove her common-law marriage with Phelps. The district court ruled that he could not show this relationship, because Illinois, where Phelps and Grace Moss were domiciled, does not recognize common-law marriages. Section 4, Chapter 89, Illinois Rev.Stat., S.H.A. Wilson v. Cook, 1912, 256 Ill. 460, 100 N.E. 222, 43 L.R.A.,N.S., 365. Appellant's counsel then attempted to show that Phelps had lived with Miss Moss in California before moving to Illinois. The trial judge refused to permit proof of their relationship in California, apparently on the theory that the law of their domicile at the time of the trial controlled their marital status. Certainly in some cases a defendant may be prejudiced by exclusion of evidence proving his unsolemnized marriage with a prosecution witness in a state having the traditional common law lack of interest in the purely ceremonial aspects of taking on a wife. But not here: defendant was not prejudiced by the court's ruling. California is as cold as Illinois when it comes to marriage without wedding bells. Section 55, West's Ann.Civil Code of California. Norman v. Norman, 1898, 121 Cal. 620, 54 P. 143, 42 L.R.A., N.S., 343.

(opium). She insisted, however, that she had no dealings with anyone concerning marihuana and that she did not have any conversation, nor did Phelps, with anyone about narcotics. Miss Moss denied knowing that the marihuana package was in the locker or that marihuana was in the package.

It is not surprising that the United States attorney with commendable candor stated to the trial judge: "Your Honor, I am forced to admit that our case is very, very weak."

## II.

At the conclusion of the Court's charges, counsel for Phelps requested orally that the Court charge the jury on the law of accomplice testimony. The Court declined, saying: "I see no basis for [an] accomplice [charge]". Government counsel then spoke up: "I think maybe, Your Honor, she is an accomplice witness, though not an accomplice defendant. I believe you should charge them on accomplice [testimony]." Instead, the Court charged:

"Well, in this case the witness, this woman Grace Moss, she has testified that she was living with this man; that they were traveling around together, and she testified that she didn't know anything about this marihuana; that she never discussed it with him in Mexico or over here; that she didn't know anything about it at the time that she went down to the station; she didn't know what was in the box; she didn't know anything about it until the officer told her what it was. Now, under those circumstances she would hardly be an accomplice. The mere fact that she went down to get this box at the request of the Defendant would not necessarily make her an accomplice to the transportation of the marihuana across the State line. I don't see, Gentlemen, that it is necessary to go further on that. You may retire. (Whereupon the jury retired to deliberate of their verdict.)"

We disagree with the trial judge. If a decision had to be made, as a matter of law, as to whether Grace Moss was an accomplice, a majority of the panel would hold that she was an accomplice.[3] We are unanimously of the opinion, however, that the Court erred, in the circumstances of this case, in deciding the question himself rather than in submitting it to the jury. The evidence raises a reasonable doubt as to whether Grace Moss was an accessory, an active participant with Phelps, or, indeed, the real culprit.

A skeptical approach to accomplice testimony is a mark of the fair administration of justice. From Crown political prosecutions, and before, to recent prison camp inquisitions, a long history of human frailty and governmental overreaching for conviction justifies distrust in accomplice testimony. Cobham's misplaced hope for immunity that helped send Raleigh to the Tower is on the same level with the hope of some narcotic peddler or some other poor wretch to save *his* skin by laying the entire blame on a friend or close associate. Twice Phelps has been convicted of violating the narcotic laws, but in this case, no less than in any other criminal case, the fair administration of justice requires that if there is a reasonable doubt as to whether a witness is an accomplice, the jury should resolve the doubt and receive full instructions on the law of accomplice testimony, including a caution against placing too much reliance upon the testimony of an accomplice.[4]

3. "In order for one to be an accomplice he must be concerned in the commission of the specific crime with which the defendant is charged, he must be an associate in guilt of that crime, a participant in that offense as principal or accessory." Risinger v. United States, 5 Cir., 1956, 236 F.2d 96, 99. "The generally accept-ed test as to whether a witness is an accomplice is whether he himself could have been indicted for the offense either as principal or accessory." 14 Amer. Juris. 840-1, Criminal Law, Sec. 110.

4. Holmgren v. United States, 1910, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861; Caminetti v. United States, 1917, 242

■ Whether the error is reversible error depends on the circumstance of each case and the conduct of the trial as a whole. Requests to charge are "not to be considered abstractly or in vacuo * * * They must be considered in their relation to the trial as a whole". Pine v. United States, 5 Cir., 1943, 135 F.2d 353, 355, certiorari denied 320 U.S. 740, 65 S.Ct. 40, 88 L.Ed. 439. In the Pine case this Court set up three criteria for reversible error. Refusal to charge may be regarded as reversible error "if, but only if, (1) it is in itself a correct charge, (2) it is not substantially covered in the main charge, and (3) it is on such a vital point in the case that the failure to give it deprived defendant of a defense and seriously impaired its effective presentation."

## III.

In weighing the fairness of the trial as a whole, we bear in mind that the Court properly charged the jury: "If you find that this man was in possession of the marihuana, then the presumption is that he brought it across the state line." We bear in mind also that the Court charged, improperly we think: "Now, there are certain facts that are very definite * * * At the hotel this defendant had a key to a box in the depot. He told this girl to take this key and go down to the depot and get a package. It is immaterial whether she knew anything about what was in the package or not." These two charges must be considered with the trial judge's colloquy with the attorneys and his refusal to give a charge on accomplice testimony.

In this case there was no direct proof of guilt. Guilt was presumed from possession of the marihuana.[5] The actual or physical possession of the marihuana was in Grace Moss. The legal or constructive possession was in the owner of the key to locker 475.[6] This could have been either Grace Moss or John Phelps, or both. The case turned therefore on whether Grace Moss was telling the truth; her testimony was the only testimony linking Phelps with the key.

■ The necessary effect of the totality of the Court's charges was as if the Court had instructed the jury: Either Grace Moss or John Phelps is guilty, but Grace Moss is not guilty. It seems to us that the trial judge decided this case himself, without benefit of jury. The jury should have had an opportunity to decide whether Grace Moss was telling the truth; to decide whether Grace Moss or John Phelps was guilty by possession of the marihuana; to decide whether Grace Moss was an accomplice and then to weigh with caution the credibility of her testimony. The trial judge's failure to allow the jury to decide these questions

---

U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442. For a recent statement of the law by this Court see Lyles v. United States, 5 Cir., 1957, 249 F.2d 744.

5. The Narcotic Drugs and Import Act, as amended, establishes the statutory presumption that "possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury". This language is the same in both Sections 174 and 176a of Title 21 U.S.C.A. "Under the charging statutes, the sometimes troublesome elements of intent are not here involved, for possession alone is sufficient for conviction." Stoppeli v. United States, 9 Cir., 1950, 183 F.2d 391, 393, 394. It is not even necessary, under Roviaro v. United States, 1956, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, that the government show that the accused knew that he possessed narcotics. Proof of possession

of any sort is sufficient in the absence of satisfactory explanation. Pitta v. United States, 9 Cir., 1947, 164 F.2d 601, 602.

6. "Possession", said Domat in a notably precise and succinct definition, "is the detention of a thing, which he who is master of it, or who has reason to believe that he is, has in his own keeping, or in that of another person by whom he possesses. * * * The delivery and taking possession of movables * * * is sufficient for putting them into the possession of the new master, either to leave them in his hands, if he had them already, as if a depository should buy what was deposited with him; or, *if they are kept in a place under lock and key, to deliver to him the key.*" 1 Domat, Bk. 111, Tit. 7, Sections 1 and 2, pp. 845, 860 (Strahan transl., ed. by Cushing, Boston, 1853).

was plain error under Rule 52(b) of Federal Rules of Criminal Procedure.

This case is similar to Freed v. United States, 1920, 49 App.D.C. 392, 266 F. 1012, 1016, in which the defendant was charged with violation of the Mann Act and convicted in the lower court on the testimony of two women named in the indictment a third who accompanied them, and two men who were members of the party. The trial judge refused to instruct the jury on accomplice testimony. In reversing the judgment, the Court pointed out that all of the witnesses might have been accomplices, that "there was no direct evidence that was untainted", that the defendant was deprived of presenting a material issue to the jury; that therefore the defendant was not accorded the fair and impartial trial to which he was entitled and his interest may have been substantially affected.[7] That is the situation here, except that this case is a stronger one for reversal. See also McLendon v. United States, 8 Cir., 1927, 19 F.2d 465 and United States v. Balodimas, 7 Cir., 1949, 177 F.2d 485.

In the instant case (1) the trial judge's positive action in exonerating Grace Moss, in effect telling the jury to believe her story, was as detrimental to the defendant's substantial rights as (2) the trial judge's negative action in refusing to instruct on accomplice testimony. The interaction of the two foreclosed the defendant from being able to defend himself on the most vital point in the case: was there sufficient proof of defendant's possession of the marihuana to justify the statutory presumption of guilt? The accused was deprived of his constitutional right to a trial by jury as effectively as if there had been no jury.

The judgment is

Reversed and remanded.

---

7. "Coming back to the present case, unquestionably the jury might have found that each of the three women who testified was an accomplice as to the others. * * * The testimony of the two male members of the party was even more tainted, for unquestionably under that testimony their conduct was as culpable as that of defendant. The fact that they so freely implicated themselves in testifying against this defendant is significant, especially as it does not appear that either has been prosecuted. The situation confronting the trial court, therefore, was unusual. There was no direct evidence that was untainted. While it is not improbable that the same result would have been reached, had the court cautioned and advised the jury as to the danger of convicting upon the uncorroborated testimony of accomplices, it is not for us to speculate upon this question and resolve it against the accused. The charge of the court fell far short, in our view, of the requirements of the situation. * * * Had the court defined an accomplice, and brought sharply to the attention of the jury the character of the government's testimony against the defendant, it cannot be doubted that his counsel would have been in a better position to present his case to the jury, and who may say that the point of view of the jury might not have been different." Freed v. United States, 1920, 49 App.D.C. 392, 266 F. 1012, 1016.