[Civ. No. 8332.   Fourth Dist., Div. One.   Aug. 10, 1967.]

WILLIAM W. SHAW, Plaintiff and Respondent, v. TED LEFF, Defendant and Appellant.

Ellis J. Horvitz for Defendant and Appellant.

Thompson & Colegate and Don Brown for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Is the following a complete, unambiguous, integrated agreement, needing no extrinsic evidentiary interpretation?

LAW OFFICES
**SHAW, BARNETT & MORGAN**

WILLIAM W. SHAW     3859 MAIN STREET     TELEPHONE
JESS A. BARNETT     RIVERSIDE, CALIFORNIA     OVERLAND 4-2340
JOHN B. MORGAN

1/9/61

Mr. Ted Leff—

*Divorce*

Retainer ..........................750.00
Court Time ......................150.00 per day
plus costs

WILLIAM W. SHAW

The trial court held it was incomplete, ambiguous, non-integrated, and permitted introduction of extrinsic interpretive evidence. Defendant appeals from a judgment favoring plaintiff following the jury's determination plaintiff's legal services were reasonably worth $13,500, offset by $2,500 already paid by defendant.

We examine the bare memorandum without recitation of any further facts, as defendant would have us do. It appears to relate to fees for Mr. Ted Leff by William W. Shaw, undoubtedly a lawyer. In entirety it states: for a "Divorce," there is a "Retainer" of "750.00" and "150.00 per day" for "Court Time," "plus costs."

We are not told what the parties understood a divorce to include; legally defined it is a dissolution of the bonds of matrimony (*McDonald* v. *McDonald*, 6 Cal.2d 457, 461 [58 P.2d 163, 104 A.L.R. 1290] ; *San Chez* v. *Superior Court*, 153 Cal.App.2d 162, 164 [314 P.2d 135]). A man and woman are married; that marriage is dissolved. Is this all there is to a divorce? Is this all the parties had in mind, in looking at the memorandum, construing it most strictly against the plaintiff? What about accruals to a marriage, children and property? Need they be considered if a mere dissolution of marriage is the goal? What about custody of children? Support? Is alimony a feature of the dissolution? Is there community property, and its extent? Separate property? Is a property settlement agreement included? How about an order to show cause?

If the memorandum binds the parties, as contended by defendant, and "divorce" means a mere dissolution of marriage, is plaintiff free to make other fee arrangements with defendant for work on peripheral features, such as custody of children, and property?

What does retainer mean? To engage the services of attorney Shaw? Does it include more than engagement? Does it include preparation of the case as well? Does one consider the amount of the retainer, $750, to determine whether it covers mere engagement, or also preparation? If the retainer covers mere engagement, since the next proviso for fees is "Court Time," what about the hiatus between the two: investigation, preparation of facts, legal research, pleadings, meetings with witnesses, depositions? When is the obligation to be paid?

The trial court properly determined the memorandum is incomplete and ambiguous; permitted the introduction of extrinsic evidence to explain it, and to establish another basis for a fee, a reasonable fee for services rendered.

The surrounding circumstances are thus:

Defendant consulted plaintiff about a divorce. Initially defendant wanted to obtain evidence of his wife's adultery; with this evidence he said the divorce would not be difficult. At defendant's suggestion, plaintiff hired an investigator, who obtained such evidence. At the second meeting of the parties, discussing the likelihood of a contested action, defendant assured plaintiff his wife would "give up and leave" when faced with a complaint charging adultery. Fees were then discussed. Plaintiff said the uncertainty of what might develop made it difficult to quote fees. Defendant responded his wife was "nuts about this Frenchman . . . she's going to take off with him . . . she don't want the boy . . . I want to get her served as soon as I can. That will be all there will be to it." When plaintiff suggested a possible contest, defendant dismissed it with the observation "I know my wife and she told me she loves this fellow and . . . all you have to do is serve the papers and that will be it . . . , my lawyer in Los Angeles, Charley Katz, says he gets $750.00 retainer fee and $150.00 for day in Court . . ." Plaintiff responded, ". . . if all I am going to do is serve the papers and there is no order to show cause and it goes practically as a default, that is okay with me." Defendant then asked plaintiff for a memorandum to give his tax man, and plaintiff obliged with the memorandum recited above, dated January 9, 1961. Defendant then handed plaintiff a check for $750; he voluntarily presented plaintiff an unsolicited $250 check about January 16, 1961.

Plaintiff prepared a complaint, summons, and an order to show cause to remove the wife from the home and to obtain custody of the son. Before the hearing on the order to show

cause defendant told plaintiff his wife probably would not appear and the matter probably would be heard as a default. Instead, the wife appeared through an attorney, filed and served an answer, cross-complaint, and an order to show cause seeking attorney's fees, custody and support. The stage was thus set for battle.

Plaintiff then pointed out to defendant he could not represent him as originally discussed. Defendant countered, "I don't care what it costs. I want . . . the property . . . custody of the boy . . . get her out of the house."

In April 1961, defendant related he did not care about the cost, the property, the money—all he wanted was his son. By letter of May 4, 1961, defendant unilaterally sought to alter the "original retainer agreement." Plaintiff responded by inviting defendant to obtain other counsel; defendant refused, stating he wanted plaintiff to represent him; plaintiff told defendant he would not represent defendant on the basis of the May 4 letter. Defendant concluded, "I want that boy and write your own ticket."

In July 1961, when plaintiff told defendant he was spending so much time on defendant's case he would need more money, defendant gave plaintiff an additional $1,000; and a further $500 in March 1962. Plaintiff testified his conservative estimate of time devoted to defendant's divorce case was between five hundred and six hundred hours. The record amply sets forth in detail plaintiff's devotion to the case, preparing for trial, conducting discovery, taking depositions, traveling, and interviewing witnesses.

■ That plaintiff rendered fair and valuable services is supported by substantial evidence. In brief, plaintiff prosecuted defendant's case to a conclusion, resisting a cross-complaint charging defendant with physical cruelty and adultery; combatting the claim by defendant's wife that defendant was worth $1,800,000, represented by community property. Plaintiff's efforts were successful. Defendant was awarded a divorce, and most important to him, custody of the child; his wife received about $100,000 as her portion of the community property, but no alimony.

Judgment affirmed.

Coughlin, J., and Lazar, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 5, 1967.

*Assigned by the Chairman of the Judicial Council.